**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**DONNA DUNN**                                             **PLAINTIFF**

**V.**                          **4:06CV0531 JMM**

**OFFICE OF PERSONNEL MANAGEMENT**            **DEFENDANT**

<u>**ORDER**</u>

        Plaintiff, Donna Dunn, seeks judicial review  pursuant to the Employee Retirement

Income Security Act ("ERISA") of the decision by the defendant Office of Personnel

Management ("OPM") denying plaintiff reimbursement for a medical procedure.  Pending is

plaintiff's motion for judgment on the record.  The defendant has responded.  For the reasons set

forth below, the Court finds for the plaintiff.

1. *Factual Background*

        Plaintiff is a member of the insurance plan provided by the National Association of Letter

Carriers ("NALC").  The NALC is an employee organization as defined and governed by 5

U.S.C. § 8901(8).   NALC provides health insurance to federal employees and their families.

OPM is a federal agency and one of its duties is the administration of the Federal Employees

Health Benefits Act ("FEHBA").

        Plaintiff suffers from obesity.  Plaintiff tried numerous treatments and diets in an attempt

to reduce her weight.  Some of the treatments resulted in short term weight loss but ultimately

failed, oftentimes with plaintiff gaining more weight than she lost.  As a result of being

overweight, plaintiff suffers from high blood pressure, hypertension, orthopedic problems and

hypercholesterolemia.  Plaintiff consulted with Dr. Jaime Ponce, a bariatric surgeon, at the

Hamilton Medical Center in Dalton, Georgia.  Dr. Ponce found plaintiff to be 5' 8 ½ " tall,

weighing 241 pounds, with a Body Mass Index ("BMI") of 36.1 and having comorbidities of

hypertension, severe arthropathy and gastroesophageal reflux.  Plaintiff was taking medications

for these conditions and there is a familial history of comorbid conditions.

Ponce also noted that plaintiff had been in this condition for more than five years and had

tried to lose weight under physician-supervised weight programs for several years without

success.  Based on these findings, Ponce decided plaintiff was morbidly obese and, therefore, an

appropriate candidate for a  LAP-BAND procedure.  Dr. Ponce submitted a request for

preauthorization to the NALC Health Benefit Plan ("Plan") on plaintiff's behalf.  (R at 3-6.)

On March 21, 2003, the Plan denied the request and stated plaintiff did not meet the

criteria for the LAP-BAND procedure as described on page 34 of the plan brochure.  The Plan

states as follows:

> ......for treatment of morbid obesity-a condition in which an individual weighs
> 100 pounds or 100% over his or her normal weight with complicating medical
> conditions and attempts to reduce weight using a doctor-monitored diet and
> exercise program were unsuccessful; Patient must be 18 or older.  (R. at 469).

On March 26, 2003, plaintiff appealed the Plan's denial.  Plaintiff asserted that the

National Institute of Health (NIH) and the American Medical Association (AMA) criteria for

obesity management is a BMI of 35 or greater with co-morbidities.  Plaintiff provided a letter

from her gynecologist, Dr. Holly Cockrum, asking that the Plan reconsider it's decision because

plaintiff met the NIH and AMA criteria.  (R. at 8.)  Plaintiff also provided FDA pre-market

approval of the LAP-BAND, medical records and professional articles about the procedure.  (R.

at 14-53.)  On April 2, the Plan again denied pre-authorization for the procedure for a different

reason, stating that it was "investigational/experimental and/or not considered to be clinically

effective."

On April 16, 2003, plaintiff responded with an appeal letter to the NALC Plan providing proof again that the procedure was FDA approved and not experimental or investigational. Plaintiff relayed her plans to  proceed with the surgery on April 30, 2003, and seek reimbursement from the Plan.

On May 8, 2003, the Plan explained why they denied plaintiff's request for reconsideration.  The Plan stated that the LAP-BAND procedure had been approved by the FDA, but "remains investigational/experimental", and that:

> In addition, the patient did not meet the criteria listed on page 34 of the brochure. Documentation submitted state her BMI as 36.1.  The BMI calculator for the American Society of Bariatric Surgery gives a BMI of 34.97.  Neither indicates morbid obesity.  Neither Dr. Ponce from Surgical Weight Management @ Hamilton Medical Center or Dr. Cockrum, the referring physician, indicate the patient is 100 lbs. Or 100% overweight.  Also, please note our March 21, 2003 denial stating that the patient did not meet the criteria was not challenged or questioned by Dr. Ponce.  We were also notified in a telephone call to Angie @ Weight Management office (ph#706-272-6668) on March 18, 2003, that Donna Dunn's ideal weight is 200 lbs.  (R. at 261-263.)

On May 15, 2003, OPM notified plaintiff that OPM's independent medical consultant needed additional medical information in order to evaluate plaintiff's claim.  The physician requested the following: history, physical, other medical records from her primary care physician for the period from November 1, 2002 to April 30, 2003; similar records from specialists; and documents relative to physician-monitored diet and exercise programs.  (R. at 513-514.)

On June 4, 2003, plaintiff responded to this request by supplying additional medical records.  Included was a two-year old letter from a Dr. Beland that said the plaintiff was "moderately overweight" and weighed 224 lbs.  Also included were records from the University

3

of Arkansas For Medical Sciences Medical Center Weight Control Program where the plaintiff responded that she would be comfortable in maintaining a weight of 195-200 lbs.  (R. at 80.) Finally, the court notes that included in the records for the time period requested by OPM is a report from Dr. Gerald Silvoso of the Little Rock Diagnostic Clinic that lists plaintiff's weight November 14, 2002, at 247 lbs.  (R. at 104-105.)

On June 13, 2003, OPM requested that its medical consultant review plaintiff's claim to determine 1) if she met the criteria in the Plan Brochure for obesity surgery; 2) whether the LAP-BAND procedure is consistent with the standards of good medical practice in the United States; and, 3) was it medically necessary to treat plaintiff's condition.  (R. at 336.)

The Plan Brochure defines "medical necessity" as:

Service, drugs, supplies or equipment provided by a hospital or a covered provider of the health care services that we determine:
•	Are appropriate to diagnose or treat your condition, illness or injury;
•	Are consistent with standards of good medical practice in the United States;
•	Are not primarily for personal comfort or convenience of you, your family, or your provider;
•	Are not related to your scholastic education or vocational training; and
•	In the case of impatient care, cannot be safely provided on an outpatient basis.


(R. at 263, 500.) (emphasis added).

In his June 23, 2003, report the reviewing physician, Dr. Harry Sax,  stated:

The patient is a 39-year old female with a BMI of 36 and actual body weight of 242 pounds.  Ideal body weight for a 5' 8.5" female is 145 pounds.....A Gastric lap Banding procedure has been requested.  The patient does not meet the NALC criteria for obesity surgery as she is not 100 pounds or 100% of her normal weight.  Further, while Lap banding is FDA approved, it mimics the vertical band gastroplasty that has fallen out of favor due to high rates of reflux and worse weight control. (Sarr, et al.J.Gastroint Surg).  (R. at 332-334.)

Dr. Sax concluded that the plaintiff did not meet the NALC brochure criteria for obesity

4

surgery and that the "[a]djustable Laparoscopic Gastric Band (Lap- Band) CPT Code 43843 has fallen out of favor in the United States and therefore cannot be considered to meet good standards of medical practice."  (R. at 332.)

On December 2, 2005, plaintiff requested that OPM provide her with the entire file related to her claim, which OPM provided on January 12, 2006.  On January 11, plaintiff wrote OPM and said she knew that she had the option to file suit in federal court but she preferred to resolve it without doing so.  She provided additional information regarding the claim and asked OPM to reopen the claim.  OPM denied this request.

2.  *Standard of Review*

ERISA provides for judicial review of disability benefit denial decisions.  Under ERISA, a denial of benefits by a plan administrator must be reviewed *de novo* unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, in which case the administrator's decision is reviewed for an abuse of discretion.  *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir.1998) citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).   In this case, OPM had such discretionary authority.

In applying an abuse of discretion standard, the reviewing court must affirm if a "reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision."  *Ferrari v. Teachers Ins. and Annuity Ass'n*, 278 F.3d 801, 807 (8th Cir. 2002).  A reasonable decision is one based on substantial evidence that was actually before the plan administrator.  Substantial evidence is defined as

"more than a scintilla but less than a preponderance." *Schatz v. Mutual of Omaha Ins. Co.*, 220

F.3d 944, 949 (8th Cir. 2000). A reviewing court may consider both the quantity and the quality

of evidence before a plan administrator. *Donaho v. FMC Corp.*, 74 F.3d 894, 900 (8th Cir. 1996)

"When there is a conflict of opinion between a claimant's treating physicians and the plan

administrator's reviewing physicians, the plan administrator has discretion to deny benefits unless

the record does not support denial." *Johnson v. Metropolitan Life Ins. Co.*, 437 F.3d 809, 814 (8th

Cir.2006). *Coker v. Metro. Life Ins. Co.*, 281 F.3d 793, 799 (8th Cir.2002). "In prior cases, we

have held that where there is a conflict of opinion, the plan administrator does not abuse his

discretion in finding that the employee is not disabled. *See Cox II*, 13 F.3d at 275. However,

where the administrative decision <u>lacks support in the record, or where the evidence in support of</u>

<u>the decision does not ring true and is so overwhelmed by contrary evidence, the administrative</u>

<u>decision is unreasonable and will not stand</u>. That is the case here." *Donaho*, 74 F.3d at 901.

(emphasis added). S*ee also, Torgeson v. Unum Life Ins. Co. Of America*, 466 F.Supp.2d 1096

(N.D. Iowa 2006).

3. *Discussion*:

After the Plan first denied  plaintiff's benefits because she failed to meet the criteria, it

next denied the requested benefits because it found the procedure to be

"investigational/experimental and/or not considered to be clinically effective."   The two final

reasons OPM gave the plaintiff for denying her claim were that the reviewing physician, Dr. Sax,

concluded that 1) plaintiff did not meet the NALC brochure criteria for obesity surgery and 2) the

"[a]djustable Laparoscopic Gastric Band (Lap- Band) CPT Code 43843 has fallen out of favor in

the United States and therefore cannot be considered to meet good standards of medical

6

practice."

In first addressing the issue of meeting the criteria, the court notes that OPM only disputes that the plaintiff did not meet the weight requirement necessary to justify the procedure. Plaintiff met the other elements of the Plan which included many complicating medical conditions and failure of physician monitored attempts to lose weight by diet and exercise for over five years.  The criteria according to the Plan for gastric bypass or stapling was that plaintiff must be "100 lbs. or 100% over her normal weight".  Oddly, the Plan called Dr. Ponce's office on March 18, 2003 and asked "Angie", a receptionist, what the plaintiff's ideal weight was which she said was 200 pounds.  The court, however, does not consider the receptionist's opinion in reaching its decision because of her obvious lack of medical expertise compared to the OPM's own physician and the two treating physicians.  Dr. Sax determined that plaintiff's ideal weight is 145 based on her height.  How Dr. Sax reached this conclusion is not in the record.  The Plan does not detail how "100 lbs. or 100% over normal weight" is to be determined.

In reviewing the record, the court notes that Dr. Sax specifically asked for the plaintiff's medical records, including records from specialists, from November 1, 2002 to April 30, 2003. In the requested records for the specified time period that Dr. Sax was concerned with was a report from Dr. Gerald Silvoso which clearly showed that plaintiff's weight was 247 pounds on November 14, 2002.  The plaintiff, therefore, weighed 102 pounds over her normal weight which surpasses the Plan's criteria within three and a half months (3.5) of her request for preauthorization for the procedure.   As does anyone's weight fluctuate daily/monthly, so did the plaintiff's as revealed throughout the record.

In addition, the plaintiff's two treating physicians, Drs. Ponce and Cockrum both stated

that plaintiff had a BMI of 36.1 and co-morbidities.  Both doctors looked at the NIH and AMA guidelines to determine that her BMI, presence of comorbidities, the fact that she had been overweight for five years, and had unsuccessfully attempted to lose weight through physician monitored weight loss and exercise programs qualified plaintiff as "morbidly obese".  OPM points to the fact that the Plan does not address BMI factors and that it does not have to adhere to NIH and AMA guidelines.  Interestingly, although the plan is devoid of any guidance as to what makes someone 100 pounds or 100 % overweight, two of the three articles cited by Dr. Sax state that patients are eligible for surgery and are considered morbidly or severely obese if they have failed attempts at non-surgical weight loss and have a BMI of 35 or more with comorbidy.  The third article cited by Dr. Sax refers to BMI numbers in its' data.

When there is a difference of opinion between a claimant's treating physicians and the plan administrator's reviewing physicians, the Eighth Circuit has held that a plan administrator's reviewing physicians has discretion to deny benefits unless the record does not support denial. *Torgeson,* 466 F.Supp.2d at 1131.  Here, the record clearly does not support the denial of benefits based on plaintiff's weight.  By the Plan's own guidelines, plaintiff was over 100 lbs. overweight about three months before she requested her surgery, a time period for which OPM had requested plaintiff's medical records.   In addition, two treating physicians, the NIH, the AMA and two articles submitted by OPM's reviewing physician assert that plaintiff was morbidly obese and a candidate for the LAP-BAND procedure based on her weight and other factors.   The *Donaho* court points to the unreasonableness of a plan administrator's decision can be determined by both the quantity and quality of the evidence.  It is completely lacking in both here.  The denial decision based on plaintiff's medical criteria does not ring true and is overwhelmed by contrary

evidence.  *Donaho*, 74 F.3d at 901-902.

In addressing OPM'S second reason for denial, OPM claims that the LAP-BAND procedure does not meet "good standards of medical practice in the United States" based on the opinion of its' reviewing physician, Dr. Sax.  Dr. Sax claims to base his opinion on three different articles as follows:  Robert E. Brolin, M.D., *Bariatric Surgery and Long-term Control of Morbid Obesity*, 288 No. 22 Journal of the American  Medical Association 2793 (2002); Barry L. Fisher, M.D. and Philip Schauer, M.D., *Medical and Surgical Options in the Treatment of Severe Obesity,* 184 American Journal of Surgery 9S-16S, (2002); and, an abstract of Bruno M. Balsinger, M.D., Juan L. Possio, M.D., Jane Mai, R.N., Keith Kelly, M.D., and Michael G. Sarrr, M.D., *Ten and More Years After Vertical Banded Gastroplasty as Primary Operation for Morbid Obesity*, Vol.4, Issue 6 Journal of Gastrointestinal Surgery 598-605 (Nov.-Dec. 2000).  Although not provided by OPM or the plaintiff, the court obtained copies of these articles that the reviewing physician referenced and are cited by Dr. Sax in the record to see if they stated that the LAP-BAND did not meet good standards of medical practice.

After a review of the articles the court agrees with Dr. Sax in his finding that the vertical band gastroplasty (VBG) has fallen out of favor.  The court, however, finds the articles completely lacking in any comparison between the VBG and the LAP-BAND, other than they are both procedures that restrict food intake.  It appears the LAP-BAND procedure had not "fallen out of favor" as did the VBG, it merely had not been attempted before 2001 in the United States and was still in its infancy in this country in 2003.  According to the articles, the difference is that the VBG is fixed and nonadjustable.

None of the articles state that the LAP-BAND procedure "mimics" the VBG, as opined

by Dr. Sax.  To the contrary, the two articles written after the LAP-BAND procedure obtained

FDA approval state that the procedure is not new and is the most commonly performed bariatric

operation outside the United States.  The Fisher/Schauer article projects that the "[a]djustable

gastric banding systems  - - the LAP-BAND . . . and others –allow for fine adjustments of the

outlet, diameter, which may offset the disadvantages of a fixed, nonadjustable outlet " which is

the VBG procedure.

The third article by Balsinger or Sarr (Sax used Sarr's name in the text of his opinion and

Balsinger's name at the end), was referenced by Sax as an abstract, written in 2000, a year before

the LAP-BAND procedure obtained FDA approval.  The abstract contains no mention of a LAP-

BAND procedure.  The record does not say that Dr. Sax read the full text of Sarr's article which

was never published in the journal referenced.  However, the full text of the article obtained by

the court is mainly about the VBG and at the end states that they "remain skeptical" about the

LAP-BAND procedure and that some results indicate "complications comparable to those of

VBG" . . . [o]ther results, however, appear quite encouraging."  The article goes on to state that

"[i]f the laparoscopic equivalent of this procedure (laparoscopic banding) will produce better

long-term results due to the lack of a staple line (that can disrupt) and adjustability of the stoma

is questionable."  The Balsinger/Sarr's article noted that studies are underway.  The article never

asserts that the LAP-BAND "mimics" the VBG or that it does not meet good standards of

medical practice in the United States.

The record includes proof that the LAP-BAND received FDA approval in 2001.  The

court, however did not consider the articles provided by the plaintiff that were not in the record

on June 30, 2003, when the OPM rendered its' final decision.  5 C.F.R. 890.107(d)(3).  Dr. Sax

simply provides no support for his assertion that the LAP-BAND procedure does not meet good standards of practice in the United States.  The court finds that the reviewing physician's findings are not supported by the record, do not ring true, and are overwhelmed by contrary evidence.

For these reasons, the Court finds that OPM abused its discretion by determining that plaintiff was not entitled to preauthorization for treatment of her morbid obesity.  Plaintiff is entitled to reimbursement for her LAP-BAND procedure and all subsequent visits to evaluate and continue treatment, although the case is remanded to the OPM to determine the precise amount of benefits due to plaintiff.  Pursuant 29 U.S.C. § 1132(a)(3)(B) the plaintiff should be awarded prejudgment interest on benefits improperly withheld. and plaintiff is entitled to an award of an attorney fee pursuant to § 1132(g)(1).   The precise amount of any such award for prejudgment interest and an attorney fee, however, must be determined in a subsequent order, after the parties have made the appropriate submissions required under applicable local rules for fee claims.

Plaintiff's motion (docket # 8) is GRANTED.   IT IS SO ORDERED this 9th day of March, 2007.


James M. Moody
District Judge United States